**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN MURPHY, CECIL MATHEW, and NIRUPA MATHEW, | |
| Plaintiffs, | |
| v. | No. 17 CV 8114 |
| | Judge Manish S. Shah |
| FOSTER PREMIER, INC., HOMEWISE SERVICE CORP., INC., and NEXTLEVEL ASSOC. SOLUTIONS, INC., | |
| Defendants.* | |

**MEMORANDUM OPINION AND ORDER**

Illinois law regulates resales of condos and similar buildings and ensures that prospective buyers have access to certain documents. Building associations are required to make these documents available to prospective purchasers—either directly or through the unit seller, depending on the type of building. The associations managing plaintiffs' buildings delegated their property-management duties to defendant Foster Premier. Foster Premier, in turn, hired defendant HomeWise to provide unit sellers with the disclosure documents. When plaintiffs John Murphy and Cecil and Nirupa Mathew decided to sell their units, they visited Foster Premier's website to obtain the necessary documents. Foster Premier's website immediately redirected them to HomeWise's website, where plaintiffs paid

---

* The notice of removal that generated the caption used by the clerk's office spelled plaintiffs' last name "Matthew," but plaintiffs' complaint and filings spell it "Mathew." The caption also refers to defendant Foster/Premier, Inc., but that defendant refers to itself as Foster Premier, Inc.

for electronic copies of the documents. Plaintiffs brought this lawsuit, alleging that the fees HomeWise charged were excessive and in violation of Illinois statutory and common law. Defendants move to dismiss. For the reasons stated below, their motions are granted.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id*. at 678–79.

## II.    Background

Plaintiff John Murphy owned a condo unit and plaintiffs Cecil and Nirupa Mathew owned a unit in a common interest community.[1] [1-1] ¶¶ 11, 15.[2] Defendant Foster Premier, a property-management company, agreed to manage the building associations' operations and take over the associations' disclosure obligations. *Id*. ¶ 16. Foster Premier then contracted with defendant HomeWise to supply required documents to unit sellers. *Id*. ¶ 17. A drop-down menu on Foster Premier's website

---

[1] Plaintiffs accidentally alleged in ¶ 14 of the complaint that the Mathews owned a condominium unit. They clarify in their response that the Mathews owned a unit in a common interest community, which is consistent with other allegations in the complaint. A common interest community is defined as "real estate other than a condominium or cooperative with respect to which any person by virtue of his or her ownership of a partial interest or a unit therein is obligated to pay for the maintenance, improvement, [etc.] . . . which is administered by an association." 765 ILCS 160/1-5.

[2] Bracketed numbers refer to entries on the district court docket.

labeled "closing documents" automatically forwarded users to HomeWise's website, where users could pay to download disclosure documents. *Id*. ¶¶ 18, 27, 35.

In 2015, Murphy contracted to sell his condo unit, and in October, he requested disclosure documents from HomeWise. *Id*. ¶¶ 23, 25. HomeWise charged him $335 ($250 for the initial "22.1 and Paid Assessment Letter Bundle," a $5 "Convenience Fee," and an additional $80 for a "Paid Assessment Letter Update" provided a month and half later). *Id*. ¶ 27. The Mathews contracted to sell their property in 2017, and also requested disclosure documents from HomeWise. *Id*. ¶¶ 31, 33. The Mathews paid $350 for their documents ($320 for a "22.1 and Paid Assessment Letter Bundle," $5 for a "Convenience Fee," and $25 for a "Transfer Fee"). *Id*. ¶ 35. Plaintiffs had no other reasonably practical means of accessing the documents, and they could not have sold their units without the documents. *Id*. ¶¶ 26, 28, 34, 36.

## III. Analysis

Plaintiffs allege that defendants charged excessive fees for providing disclosure documents in violation of the Condominium Property Act, the Common Interest Community Association Act, and the Illinois Consumer Fraud Act. Plaintiffs also bring claims for aiding and abetting breach of fiduciary duty, inducing breach of fiduciary duty, civil conspiracy, and unjust enrichment.[3]

---

[3] Plaintiffs filed their putative class action in Illinois state court, and defendants removed, invoking original jurisdiction pursuant to the Class Action Fairness Act. CAFA confers original jurisdiction where "(1) the aggregate amount in controversy exceeds $5,000,000; (2) any member of the plaintiff class is a citizen of a state different from any defendant ("minimal diversity"); (3) the primary defendants are not states, state officials, or other government entities . . . and (4) the number of members of the plaintiff class is 100 or

## A.    The Condo Act and the Common Interest Community Act

The Condo Act provides that an owner selling his unit "shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand," various disclosure documents. 765 ILCS 605/22.1. "A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." *Id*. The Common Interest Community Act is slightly different in that it provides that for the resale of any unit, "the board shall make available for inspection to the prospective purchaser, upon demand," certain disclosure documents. 765 ILCS 160/1-35. Like the Condo Act, the Common Interest Community Act authorizes the board or the association to charge the unit seller a "reasonable fee covering the direct out-of-pocket cost of copying and providing such information." *Id*. Plaintiffs, who represent both condo and common-interest-community sellers, bring claims under these acts alleging that defendants charged more than a reasonable fee to cover the direct out-of-pocket costs associated with providing the disclosure documents.

---

more." *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)). Plaintiffs allege actual individual damages of roughly $300 and assert that Foster Premier manages over 20,000 units in and around Chicago. [1-1] ¶¶ 27, 35, 72. Given these allegations and the fact plaintiffs also seek punitive damages, the amount in controversy plausibly exceeds $5,000,000, and the number of individuals in the class plausibly exceeds 100. The minimal-diversity requirement is also satisfied—both named plaintiffs are citizens of Illinois and defendant HomeWise is a citizen of California. *Id*. ¶¶ 10–11, 13–14, 17. Federal courts sitting in diversity apply the substantive law of the forum state, so Illinois law applies. *See Piltch v. Ford Motor Co.*, 778 F.3d 628, 631–32 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

The statutes do not expressly provide a private right of action; plaintiffs argue that there is an implied one. In determining if a private right of action may be implied from a statute, a court considers whether: the plaintiff is a member of the class for whose benefit the statute was enacted, the plaintiff's injury is one the statute was designed to prevent, a private cause of action is consistent with the underlying purpose of the statute, and implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 460 (1999). In assessing whether to imply a private right of action, courts must read the statute as a whole, not just the isolated provision. *Id.* at 462–63. The purpose of the Condo Act is to govern the affairs of Illinois condo associations by establishing procedures for the creation, sale, and operation of condos and regulating the duties of the board of managers, condo associations, and unit owners. *Royal Glen Condo. Ass'n v. S.T. Neswold & Assocs.*, 2014 IL App (2d) 131311, ¶ 22. The purpose of 22.1 of the Condo Act, specifically, is to ensure that prospective purchasers are fully informed before buying a condo. *See Nikolopulos v. Balourdos*, 245 Ill.App.3d 71, 77 (1st Dist. 1993); *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 37.

Though Illinois courts have not addressed the issue of whether to imply a private right of action for condo sellers, they have held that § 22.1 meets all of the requirements to imply a private right of action for prospective purchasers. *Id.* The purpose of § 22.1 is to ensure prospective buyers have access to disclosure documents before purchasing a condo. And understanding the legislature's

motivations for enacting § 22.1 helps to determine whether a private right of action is necessary to effectuate the purpose of the Act as a whole.

The Act seeks to streamline and regulate the different parties and processes related to condo operations. Plaintiffs, as condo owners and sellers, therefore fall within a class for whose benefit the statute was enacted. But the particular injury suffered here is not one that the statute was designed to prevent. The goal of § 22.1 was to increase disclosure. And though the legislature clarified that an association could charge reasonable costs for providing those documents, excessive fees is not the injury the Act was designed to prevent. Limiting costs may be consistent with the purpose of the Act, but it is not what motivated the legislature. Moreover, implying a private right of action is not necessary to provide an adequate remedy to the objectionable behavior. Plaintiffs could have raised the issue with the board and made clear that they objected to the board's delegation of this responsibility to Foster Premier. Plaintiffs could also pursue other legal remedies against the associations themselves for breach of any duty owed to the plaintiffs. Finally, plaintiffs could have passed on some of the costs of obtaining the documents to the purchaser, who benefitted from the sellers' prompt disclosures. There is no implied private right of action in the Condo Act under these circumstances.[4]

---

[4] Other courts have reached the same conclusion. *Horist v. Sudler & Co.*, 17-cv-8113, 2018 WL 1920113 (N.D. Ill. Apr. 24, 2018); *Ahrendt v. Condocerts.com, Inc.*, 17-cv-8418, 2018 WL 2193140 (N.D. Ill. May 14, 2018). A pending appeal in state court, *Friedman v. Lieberman Mgmt. Servs., Inc.*, 2016 CH 15920 (Cook Cty.), and the appeal in *Horist* present the issue to appellate courts. Since the decisions of those appellate courts may affect my analysis here, the dismissal of these counts is without prejudice.

Plaintiffs point to no additional features of the similar Common Interest Community Act that would justify a different outcome. And under the Common Interest Community Act, even assuming plaintiffs had a private right of action, they have not adequately alleged a violation. Unlike the Condo Act, the Common Interest Community Act requires that the board, not the seller, make disclosure documents available to prospective purchasers. 765 ILCS 160/1-35(d). Plaintiffs assert that they purchased the documents themselves, which is not contemplated by the Act. As a result, plaintiffs have failed to state a claim under either the Condo Act or the Common Interest Community Act.

### B. Illinois Consumer Fraud Act

To state an ICFA claim a plaintiff must allege (1) a deceptive or unfair practice occurred; (2) the defendant intended for the plaintiff to rely on the deception or unfair practice; (3) the act occurred in the course of conduct involving trade or commerce; (4) the plaintiff sustained actual damages; and (5) those damages were proximately caused by the defendant's wrongful conduct. *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014). Here plaintiffs allege that defendants' practice of overcharging for disclosure documents is unfair. An unconscionably high price, without more, is generally insufficient to establish unfairness. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 418 (2002). Instead, courts consider whether the practice: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Id.* at 417–18. A practice need not satisfy all three prongs to be deemed

7

unfair—a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. at 418 (quoting *Cheshire Mortg. Servs., Inc. v. Montes*, 223 Conn. 80, 106 (1992)).

A practice, even if not unlawful, may "offend[ ] public policy as established by statutes, the common law or otherwise." *Ekl v. Knecht*, 223 Ill.App.3d 234, 242 (2d Dist. 1991). In other words, courts consider whether the practice "is at least within the penumbra of some established concept of unfairness." *Id*. In arguing that defendants' practice violates public policy, plaintiffs point to the same provisions in the Condo Act and the Common Interest Community Act that allow associations to recoup reasonable fees from sellers for producing disclosure documents. These provisions, plaintiffs argue, demonstrate a policy of keeping fees low to ensure that disclosure documents are easily accessible. That plaintiffs cannot state a claim under these acts does not automatically mean they cannot demonstrate an offense against public policy for the consumer-fraud-act analysis. But as discussed above, the policy behind these statutes was to encourage disclosure to prospective purchasers. Reasonableness is a range, not a point, and whether specific fees and costs borne by the seller fall in or out of that range is not the public-policy interest the legislature had in mind. Plaintiffs do not allege that the prospective purchasers requested—either from plaintiffs or from the association—disclosure documents. As a result, they have not alleged that the defendants' actions violated the policy of ensuring purchasers receive the documents upon request.[5]

---

[5] Plaintiffs do allege that "it is a standard condition of closing to require the seller to provide" disclosure documents. [1-1] ¶¶ 28, 36. But that does not mean that defendants'

8

A practice is oppressive if plaintiffs "had no reasonable alternative." *See People ex rel. Fahner v. Hedrich*, 108 Ill.App.3d 83, 90 (2d Dist. 1982). Plaintiffs assert that Foster Premier contracted with the associations to take over their disclosure duties and that Foster Premier's website automatically redirected sellers seeking disclosure documents to HomeWise's website. Plaintiffs also allege that they had no reasonable alternative to obtain their documents. *See* [1-1] ¶¶ 26, 34. Taking these allegations as true, plaintiffs have plausibly alleged that defendants' practice was oppressive.

To be deemed unfair, the injury alleged must also be substantial, not be outweighed by any countervailing benefit, and be an injury that the consumers themselves could not have reasonably avoided. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Small personal injuries can still be substantial if they cause a large loss to the public in the aggregate. *People ex rel. Hartigan v. Stianos*, 131 Ill.App.3d 575, 581 (2d Dist. 1985). Plaintiffs allege that they each suffered around $300 in damages and that the class as a whole lost over $1.5 million. *See* [1] ¶ 21. And for the reasons discussed above, plaintiffs have also adequately alleged that they could not have reasonably avoided the injury. It is not clear from plaintiffs' allegations, however, that their injury was not outweighed by a countervailing benefit. Under the Condo and Common Interest Community Acts, property associations have thirty days to turn over requested documents. *See* 765 ILCS 605/22.1(b); 765 ILCS 160/1-35. Defendants argue, and plaintiffs do not address,

---

actions offended the particular policy of ensuring access to purchasers who affirmatively request the documents.

9

that sellers pay more to HomeWise in exchange for getting the documents more quickly—which can be necessary if a seller is looking to sell her home immediately. While some aspects of this analysis cut in plaintiffs' favor, considering all three of the *Robinson* factors together, plaintiffs have not adequately alleged that defendants' practices were sufficiently unfair to support a consumer-fraud-act claim.[6]

### C.    Aiding and Abetting and Inducement of Breach of Fiduciary Duty

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege that the defendant aided a party who performed a wrongful, injury-causing act, that the defendant was aware of its role at the time it provided the assistance, and that the defendant knowingly and substantially assisted in the violation. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill.App.3d 759, 772 (2d Dist. 2007). To state a claim for inducement of breach against a third party, a plaintiff must allege the defendant colluded with a fiduciary in committing a breach of its duty, induced or participated in such breach, and obtained benefits therefrom. *Paul H. Schwendener, Inc. v. Jupiter Elec. Co.*, 358 Ill.App.3d 65, 74 (1st Dist. 2005). Both claims require an underlying breach of fiduciary duty; so to prevail against defendants, plaintiffs must allege that the associations breached their fiduciary duties to plaintiffs.

---

[6] Defendants also argue that plaintiffs' ICFA claim is barred by the voluntary payment doctrine. But Illinois courts have held that doctrine does not apply to consumer-fraud-act claims. *See Nava v. Sears, Roebuck and Co.*, 2013 IL App (1st) 122063 ¶ 24.

10

Condo associations owe individual unit owners a fiduciary duty. 765 ILCS 605/18.4(a); *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 22.[7] But plaintiffs have not alleged facts indicating that the plaintiffs' condo association breached that duty. Plaintiffs allege that without the source of revenue generated from the document-disclosure charges, Foster Premier would likely have to charge the association more for its services. [1-1] ¶ 51. As a result, plaintiffs have not alleged that the association was unfairly profiting at the expense of the unit owners. Rather, as plaintiffs' claim is currently plead, the associations made a reasonable choice to delegate their responsibilities to a management agency. That plaintiffs disagree with that choice is not enough to allege that it constituted a breach of fiduciary duty. Because they have not alleged an underlying breach by the association, plaintiffs have not stated claims against defendants for aiding and abetting or inducement of that breach.

### D. Civil Conspiracy and Unjust Enrichment

Both the civil conspiracy and unjust enrichment claims are dependent on the survival of plaintiffs' other claims. The elements of civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose, or a lawful purpose through unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fiala v. Bickford Sr. Living Group, LLC*, 2015 IL App (2d) 150067, ¶ 62. Because plaintiffs have not adequately alleged that defendants

---

[7] Plaintiffs do not point to any provision or other authority establishing that common interest community associations owe a fiduciary duty to unit owners.

committed an overt tortious or unlawful act, their claim for civil conspiracy is dismissed.

Similarly, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then . . . unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Plaintiffs' unjust enrichment claim is based on defendants' retention of "fees charged . . . in excess of the amount allowed by Illinois law and by aiding and abetting and conspiring in the associations' breach of fiduciary duties." [1-1] ¶ 117. Because plaintiffs failed to allege the underlying violations, they have not stated a claim for unjust enrichment.

In sum, defendants' motions to dismiss plaintiffs' complaint are granted. "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). The complaint is dismissed without prejudice with leave to re-plead.

## IV.    Conclusion

Defendants' motions to dismiss [11] and [25] are granted. The complaint is dismissed without prejudice, and a status hearing is set for August 8, 2018 at 9:30 a.m. to discuss whether to stay further proceedings in light of the appeals in *Horist* and *Friedman*.

ENTER:

Manish S. Shah
United States District Judge

Date:  July 16, 2018

13